```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
 BARRY REESE

         Petitioner,                    MEMORANDUM AND ORDER

    -against-                           Civil Action No.
                                        CV-04-4338 (DGT)
 UNITED STATES OF AMERICA

         Respondent.

---------------------------------X
```

Trager, J:

Barry Reese ("petitioner"), appearing pro se, brings this motion pursuant to 28 U.S.C. § 2255, arguing three grounds for vacating, setting aside or correcting his 324-month prison sentence. See Pet'r Br. at 3, 5 & 12. Petitioner first claims that he received ineffective assistance of counsel. Id. at 3. Next, he argues that the indictment did not properly set forth the offenses for which he was sentenced. Id. at 5. Finally, petitioner argues that the indictment was constructively amended. Id. at 12. The petition is denied.

**Background**

In April 1996, petitioner was indicted along with several others on various narcotics trafficking offenses. Gov.'s Opp'n Mem. at 1-2. Counsel was appointed to represent petitioner, but in August 1997, Steven Zissou ("Zissou") was appointed as substitute counsel. Id. at 2. Zissou represented petitioner for

the next six years, up to and including petitioner's direct appeal.  Zissou Aff. ¶ 2.

In August 1998, after several of petitioner's co-defendants became cooperating witnesses, the government obtained a superseding two-count indictment (the "S-4 Indictment") against petitioner alone.  Gov.'s Opp'n Mem. at 2; Gov.'s Ex. 2 (S-4 Indictment).  Count One of the S-4 Indictment charged petitioner with conspiring to distribute heroin and cocaine base in violation of 21 U.S.C. § 841(a)(1).  Gov.'s Ex. 2.  This count did not specify the quantity of drugs involved; it just contained a string citation to statutes that mentioned the relevant drug quantity, specifically, 21 U.S.C. § 841(b)(1)(A)(i) (requiring sentences of at least ten years and up to life in prison for offenses involving one kilogram or more of heroin) and 21 U.S.C. § 841(b)(1)(A)(iii) (requiring sentences of at least ten years and as much as life in prison for offenses involving fifty grams or more of cocaine base).  See Gov.'s Opp'n Mem. at 2.

Count Two of the S-4 Indictment, which is the primary focus of this petition, charged petitioner with violating 21 U.S.C. § 848(e) by killing Ricky Beasley "while engaged in an offense punishable under Section 841(b)(1)(A) of Title 21, United States Code, to wit, the offense charged in Count One of this superseding Indictment."  Gov.'s Ex. 2.  Count Two carried a penalty of twenty years to life imprisonment or death.  21 U.S.C.

2

§ 848(e)(1)(A).

In support of Count Two, the government, during petitioner's plea, stated that it was prepared to prove petitioner approached Eddie Castro ("Castro"), a narcotics dealer with whom he worked, and told Castro that Ricky Beasley ("Beasley"), a dealer who worked for them, had been stealing drugs from them. See Gov.'s Ex. 5 (Sentencing Transcript) at 9. According to the government, petitioner told Castro that they should kill Beasley. The government obtained this information from Castro, who had agreed to cooperate with the government. Gov.'s Opp'n Mem. at 3. Petitioner does not dispute that, on June 3, 1993, he and Castro murdered Beasley. See Gov.'s Ex. 4 (Pleading Transcript) at 26. However, petitioner claimed during sentencing and now maintains that the murder was actually Castro's idea and petitioner only agreed to participate so that Castro would not kill him. See Gov.'s Ex. 5 at 11.

Zissou and petitioner discussed the advantages and disadvantages of proceeding to trial and the possibility of mounting a successful duress defense to the Beasley murder. Zissou Aff. ¶ 7-8. After lengthy discussions with Zissou, petitioner entered into a plea agreement covering both counts of the indictment. In the plea agreement, he agreed to waive any rights to appeal and any collateral attacks, provided that his sentence was below 405 months, the maximum penalty allowed under

the estimated Guidelines range of 324-405 months.  Id. at ¶ 9; Gov.'s Opp'n Mem. at 3.  In August 1999, petitioner pled guilty to both counts.  See Gov.'s Ex. 4 at 23.

During his plea allocution before Magistrate Judge Robert M. Levy, petitioner admitted that the drug conspiracy involved a kilogram or more of heroin and fifty grams or more of cocaine base.  Gov.'s Ex. 4 at 25-26.  In his affidavit in response to the present petition, Zissou maintains that he permitted petitioner to admit to the quantity because, at the time of the allocution, drug quantity was not considered an element of the offense, just a sentencing factor which the judge could find by a preponderance of the evidence.  Zissou Aff. ¶ 13.  Additionally, Zissou knew the government had several cooperating witnesses who could establish the drug quantities involved were substantially more than the statutory requirement.  Id.  As such, he did not believe the questions concerning drug quantities were particularly significant.  Id.

After petitioner pled guilty, but before he was sentenced, the United States Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000).  Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490.  Thus, it allowed defendants to argue that the mandatory minimums

of § 841 apply only if the government pleads the quantity of drugs and either proves it beyond a reasonable doubt or the defendant admits to it. Gov.'s Opp'n Mem. at 4.

Petitioner appeared for sentencing on January 26, 2001. See Gov.'s Ex. 5. In pre-sentencing papers and during oral argument, Zissou mounted a two-pronged Apprendi-based attack aimed at limiting petitioner's sentence. See Zissou Aff. ¶ 15-16; Gov.'s Opp'n Mem. at 4. First, he argued that the government did not specifically plead the quantity of drugs in Count One of the indictment. As a result, under Apprendi, petitioner could only be found guilty of violating § 841(b)(1)(C), which does not require a weight as an element of the crime. Zissou Aff. ¶ 15. That section carries a maximum sentence of twenty years. Id. Next, Zissou argued that the deficiencies of Count One also taint Count Two. Id. at ¶ 16. Because Count Two alleged a murder committed "while engaged in . . . the offense charged in Count One," and Count One had been reduced to a § 841(b)(1)(C) charge, Zissou maintained that petitioner could not be punished under Count Two or, alternatively, could only be sentenced to a maximum of twenty years. Id.

At sentencing, the government agreed with Zissou's argument on Count One, and I held that no mandatory minimum applied to Count One and that the maximum sentence for that count was twenty years. See Gov.'s Ex. 5 at 2. However, I held that Count Two

5

did not suffer from this same defect. See id. at 19-20. Count Two was adequately pled because it tracked the statue and, therefore, gave the defendant sufficient notice of the charges. See id. at 14. Petitioner was sentenced to 324 months in prison, the minimum under the Guidelines, on Count Two and a concurrent term of 240 months on Count One. Id. at 24.

On my suggestion, Zissou filed an appeal of the sentence, despite petitioner's waiver of appeal under the plea agreement. See Zissou Aff. ¶ 19. The government moved to dismiss the appeal based on petitioner's waiver of appeal and, in the alternative, petitioner's stipulation as to the narcotics quantity involved. Gov.'s Opp'n Mem. at 5. Zissou submitted papers opposing the government's motion to dismiss. See Gov.'s Ex. 6. The Court of Appeals for the Second Circuit dismissed petitioner's appeal, not on waiver grounds, but on the alternative basis argued by the government, holding that even if the Apprendi error was outside the scope of petitioner's appeal waiver or rendered the waiver unenforceable, this error was harmless in light of petitioner's stipulation as to drug quantity. Gov.'s Ex. 7.

**Discussion**

**(1)**

**Ineffective Assistance of Counsel**

Petitioner claims that his conviction was unconstitutional because of deficient representation by his attorney, Steven Zissou. Pet'r Br. at 3. To prevail on a claim of ineffective assistance of counsel, petitioner must satisfy the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must show that Zissou's performance was deficient. Id. at 687; Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001) (applying the Strickland test in petition for habeas corpus). An attorney's performance is judged by an objective standard of reasonableness, with a high degree of deference afforded to counsel's judgment. Strickland, 466 U.S. at 688-89; Loliscio, 263 F.3d at 192. Next, if the performance is shown to be deficient, petitioner must establish that the attorney's deficient performance prejudiced his defense. Strickland, 466 U.S. at 687; Loliscio, 263 F.3d at 192. The burden of proving both prongs rests with the petitioner, Strickland, 466 U.S. at 694, and because petitioner cannot here show that his counsel was at all deficient, he has not met this high burden.

Petitioner's ineffective assistance of counsel claim is entirely unsubstantiated and without merit. He claims to have

7

been prejudiced by Zissou "at every phase" of the proceedings, yet fails to articulate a single concrete example of his attorney's ineffectiveness. See Pet'r Br. at 3. Conclusory allegations of counsel's deficient performance will not sustain a § 2255 petition. See, e.g., Charles v. United States, No. 05-CV-274, 2006 WL 208838, at *2 (N.D.N.Y. Jan. 19, 2006) (stating that petitioner's "broad, generalized claims" were insufficient to sustain an ineffective assistance of counsel claim under Strickland); Besser v. Walsh, No. 02-CV-6775, 2003 WL 22093477, at *36 (S.D.N.Y. Sept. 10, 2003) (rejecting petitioner's ineffective assistance claims because they were "far too vague and unsubstantiated to support a claim for habeas corpus relief").

Attorney Zissou asserts, and petitioner does not contest, that he and petitioner "repeatedly discussed" the advantages and disadvantages of proceeding to trial, including the government's "broad array of evidence" against petitioner and the viability of a duress defense to the Beasley murder. Zissou Aff. ¶ 8. At petitioner's request, Zissou negotiated a plea agreement with the government and then fully explained the elements of this agreement to petitioner. Id. at ¶ 9-11; see also Gov.'s Ex. 4. The sentencing transcript shows that Zissou mounted a well-constructed argument aimed at limiting petitioner's sentence. See Gov.'s Ex. 5. Indeed under Count One he was successful, and

petitioner received a reduced sentence under that count.  Zissou
continued to advocate for his client on appeal, despite
petitioner's waiver of appeal under the plea agreement.  See
Zissou Aff. ¶ 19; Gov.'s Ex. 6.  That petitioner's appeal was
ultimately dismissed does not mean that Zissou's representation
was deficient.  All evidence shows that Zissou's performance was
well above the constitutional minimums established in Strickland.

Petitioner's sole example of Zissou's supposed
"ineffectiveness" is a claim that Zissou failed "to argue and
produce evidence that establishes the Jurisdictional [sic] defect
recognized in Cordoba-Murgas."  Pet'r Reply Mem. at 6.  In United
States v. Cordoba-Murgas, 422 F.3d 65 (2005), the Second Circuit
held that where the indictment for a violation of 21 U.S.C.
§ 841(a) did not specify the quantity of drugs involved, the
defendant could not be sentenced to a term above the statutory
maximum for a drug offense with an unspecified quantity, despite
the fact that the defendant had stipulated to the drug quantity
during his allocution.  Id. at 72.  Far from showing Zissou's
deficiency, this decision actually shows that his representation
was more than adequate.  Even though Cordoba-Murgas was decided
more than four years after petitioner was sentenced, Zissou used
the same logic later employed by the Second Circuit to limit
petitioner's sentence under Count One.

Petitioner's claim of ineffective assistance of counsel is

9

conclusory and unsubstantiated.  He has failed to prove that counsel's performance was in any way deficient, much less that this ineffective representation prejudiced his defense.  In light of the obvious indications that Zissou provided more than adequate representation, petitioner's ineffective assistance claim is denied.

**(2)**

**Issues with the Indictment**

Petitioner brings two claims alleging that the S-4 Indictment was flawed, thereby rendering his sentence unconstitutional.  First, Petitioner claims that his Fifth Amendment rights were violated because he was sentenced for a charge not specified in the indictment.  Pet'r Br. at 5.  This claim lacks merit.  Count One's defects were already resolved in petitioner's favor at sentencing.  Additionally, despite petitioner's continued claims to the contrary, the defects of Count One did not affect the sufficiency of Count Two.  Gov.'s Opp'n Mem. at 5.

Petitioner proffers Cordoba-Murgas as new law relevant to this issue.  However, regardless of whether this is new law, a questionable assertion given Zissou's anticipation of the holding, Cordoba-Murgas dealt exclusively with a § 841 charge, so it has no bearing on petitioner's sentencing under Count Two for

the § 848(e) violation.  The reasoning involved in that holding simply would not be applicable to § 848(e) because § 848(e), unlike § 841, does not explicitly state any particular quantity of drugs that must be involved.

Next, petitioner claims that the S-4 Indictment was constructively amended, thereby allowing him to be sentenced for a crime not charged by the grand jury.  Pet'r Br. at 12.  This claim is based on the language of Count Two, which directly references the underlying offense as "§ 841(b)(1)(A) . . . the offense charged in Count One."  See Gov.'s Ex. 2.  Because Count One was reduced to a § 841(b)(1)(C) charge in light of Apprendi, petitioner argues that his indictment under Count Two was constructively amended to accommodate this alteration.[1]

This claim is also denied.  First, it is unclear, and unlikely, that a constructive amendment argument is even available to a defendant who has plead guilty.  See Thomas v. United States, No. 04-CV-5290, 2006 WL 27442, at *5 & n.4 (S.D.N.Y. Jan. 4, 2006) (noting that the circuits disagree upon this issue, and the Second Circuit has not yet taken a position). The definition of constructive amendment just does not

---

[1]  Petitioner also seems to argue that Count One was constructively amended, but as discussed supra, the deficiencies of Count One were already resolved in petitioner's favor at his sentencing and were not constructively amended.  Count One was reduced to a § 841(b)(1)(C) charge because the relevant quantity was not specified in the indictment.

11

with a guilty plea. "An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment." United States v. Patino, 962 F.2d 263, 265 (2d Cir. 1992) (citing United States v. Miller, 471 U.S. 130, 144-45 (1985)). When a defendant pleads guilty, there is no trial and no evidence is presented. United States v. Ocasio, No. 02-CV-1192, 2004 WL 1242424, at *5 (D. Conn. June 3, 2004) (questioning the use of a constructive amendment claim in the context of a guilty plea). Therefore, it seems unlikely that a constructive amendment claim is available to petitioner after his guilty plea.

However, even assuming that petitioner could bring a constructive amendment claim after pleading guilty, petitioner's claim still fails because it lacks merit. "To satisfy the pleading requirements . . . 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)(internal quotation marks omitted)); United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (holding that an indictment stating the elements of the offense and listing the time and place of the alleged crime was facially valid). Here, Count Two tracked the statute, and accordingly was sufficient on

its face, because it fulfilled this requirement and <u>Cordoba-Murgas</u> has no applicability.

Petitioner was given adequate notice of the charged offense because Count Two specifically stated that petitioner murdered Beasley "while engaged in an offense punishable under Section 841(b)(1)(A)[,]" the exact phrase used in § 848(e). 21 U.S.C. § 848(e); see <u>United States v. Jespersen</u>, 65 F.3d 993, 1001 (2d Cir. 1995) ("We have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." (internal quotations omitted)). Although the S-4 Indictment referred to § 841(b)(1)(A), it also contained the added phrase "the offense charged in Count One." This extraneous cross-reference does not affect the sufficiency of Count Two. See <u>Miller</u>, 471 U.S. at 136 ("A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'" (quoting <u>Ford v. United States</u>, 273 U.S. 593, 602 (1927))). The government was only required to track the language of the violated statute in the indictment, which it did. Although the reference to Count One has turned out to be inaccurate, this has no effect on Count Two's sufficiency.

Petitioner's claims which allege a flawed and constructively amended indictment are both denied as without merit.

**Conclusion**

For the foregoing reasons, the motion pursuant to 28 U.S.C. § 2255 is denied. Further, a certificate of appealability shall not issue because petitioner has not demonstrated a substantial showing of a constitutional violation. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment accordingly and close this case.

Dated: Brooklyn, New York
September 21, 2006

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge